# IN THE COURT OF APPEALS OF IOWA

No. 19-0007
Filed September 11, 2019

IN THE MATTER OF THE GUARDIANSHIP and CONSERVATORSHIP OF ROBERT HITES, JR.,

ROBERT HITES, JR.,
            Ward-Appellant.
_____

Appeal from the Iowa District Court for Story County, Bethany J. Currie, Judge.

The ward appeals the order appointing his parents as co-guardians and co-conservators. **AFFIRMED.**

Magdalena Reese of Cooper, Goedicke, Reimer & Reese, P.C., West Des Moines, for appellant.

Judy Johnson of JDJ Law Firm, PLLC, Des Moines, for appellees.

Considered by Potterfield, P.J., Greer, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**BLANE, Senior Judge.**

Robert Hites, Jr. (Robert) is a twenty-five-year-old man with a high school diploma and some college course credit. In August 2018, a Lincoln, Nebraska, police officer found him at the state capitol declaring incoherently he wanted to speak to the governor. The Nebraska court involuntarily committed Robert and informed his parents, Robert Sr. and Cheryl. Providers at the hospital diagnosed Robert with paranoid schizophrenia.

While Robert was undergoing inpatient mental-health treatment, Robert Sr. and Cheryl petitioned in the Iowa courts for temporary and permanent orders appointing them guardians and conservators. The Iowa district court granted the request temporarily. Robert sought interlocutory review from the temporary order. Our supreme court denied review. After Robert discharged from the Nebraska psychiatric hospital, he returned to Iowa to live with his parents. They obtained for him insurance coverage and a case manager and took him to a mental-health provider for treatment and medication management.

Following a hearing, the court found Robert's condition met the requirements for appointment of a guardian or conservator under Iowa Code section 633.3(23) (2018). It appointed the parents as Robert's permanent co-guardians and co-conservators. In its decision, the court noted Robert refuses to take his medication and is unable to work. Robert gets confused easily and cannot concentrate over the loud voices in his head. The court determined Robert needs someone to ensure he receives proper treatment, takes his medication, maintains his insurance coverage, and participates in mental-health services. The court did

not believe Robert could live independently for any extended period. It also determined a limited guardianship was not appropriate.

Robert appeals the district court's decision. His parents have waived filing of a brief.

Parties try actions for the involuntary appointment of guardians and conservators at law. *See* Iowa Code § 633.33. Thus, we review for the correction of legal error. *See* Iowa R. App. P. 6.907; *In re Conservatorship of Deremiah*, 477 N.W.2d 691, 692 (Iowa Ct. App.1991). We are bound by the findings of fact if supported by substantial evidence. Iowa R. App. P. 6.904(3)(a). Substantial evidence exists if we may reasonably infer the finding from the record. *Deremiah*, 477 N.W.2d at 693.

To start, we presume the proposed ward is competent. *See Neidermyer v. Neidermyer*, 22 N.W.2d 346, 350 (Iowa 1946). The party seeking the guardianship has the burden to show by clear and convincing evidence the proposed ward is incompetent. Iowa Code § 633.551(1), (2). A person is incompetent when they meet one of these conditions:

> a. [They] have a decision-making capacity which is so impaired that the person is unable to care for the person's personal safety or to attend to or provide for necessities for the person such as food, shelter, clothing, or medical care, without which physical injury or illness may occur.
> b. [They] have a decision-making capacity which is so impaired that the person is unable to make, communicate, or carry out important decisions concerning the person's financial affairs.
> c. [They] have a decision-making capacity which is so impaired that both paragraphs "a" and "b" are applicable to the person.

*Id.* § 633.3(23). The court should also determine whether a limited guardianship is appropriate. *Id.* § 633.551(3).

Robert contends there was insufficient evidence to establish the need for the appointments. In the alternative, he argues the court should have established a limited guardianship.

A psychologist diagnosed Robert with acute paranoid schizophrenia. During the evaluation, Robert denied any thoughts of harming himself or others. Robert Sr. also confirmed Robert never expressed any violent or suicidal tendencies, thoughts, or actions. The psychologist observed delusions and irrational thoughts, a flat affect, and ongoing hallucinations. She referred Robert to services in the area. But a nurse from his medical provider reported to the court Robert had refused to maintain his medical regimen. The nurse recommended the court grant a permanent guardianship to ensure Robert takes his medication.

The court also admitted into evidence a letter Robert wrote setting out his delusions and hallucinations. Robert believed a cult implanted a cyborg device in his brain when he was a child and was pursuing him to "raid" his organs. At the hearing, Robert maintained those issues remain concerns for him. He continued to refuse to take medications, complaining about the side effects. He told the court, "I look down on medications. I don't feel I need them. I feel they're unhealthy for me essentially." He said, "I do not believe that I have any mental health issues." He planned to keep living with his parents and accepting their assistance with his finances but did not want them to make final decisions for him.

Robert Sr. told the court Robert needs assistance managing his mental health. He was concerned Robert was not taking his medication and still suffered from delusions and hallucinations. He believed Robert does not have insight into whether he is sick. Robert Sr. admitted Robert can cook, dress, and clean for

himself. But Robert could not support himself, pay medical bills, or file paperwork for insurance coverage.

The testimony and exhibits show Robert's decision-making capacity is significantly impaired. Most alarming, Robert thinks he does not have a mental illness and that medication is unhealthy for him. Substantial evidence, including his own admissions, also supports the court's conclusion that Robert is not taking his medications. We are not convinced he is capable of making good decisions about his medical care, even if he can feed and clothe himself. The record supports the conclusion his illness is ongoing and severe. However, at this time, he is not making rational choices about his treatment. Even if Robert has not shown any indication he will harm himself or others, if he continues on his current path, physical or further mental harm are the likely outcomes.

This record also shows Robert is not able to maintain the paperwork necessary to keep his insurance coverage. Moreover, he cannot work to pay for medical costs. This evidences an inability to make important financial decisions. Although Robert testified he would welcome his parents' assistance with such decision-making, leaving him without a guardian would open the door for his unsound judgment to override the entreaties of his parents.

Guardianship and conservatorship are necessary to ensure Robert takes his prescribed medication, maintains his insurance, and stays current in his treatment program. A limited guardianship is not appropriate here because of the severity of Robert's illness and his lack of rational engagement with his mental-health condition. We find no error in the district court's order appointing Robert Sr. and Cheryl as permanent co-guardians and co-conservators.

**AFFIRMED.**